IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PETER GIBBONS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL REAL ESTATE INVESTORS, LC, et al., <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No.   2:07-cv-0990-CW <br><br> Judge Clark Waddoups |

## INTRODUCTION

Before the court is Plaintiffs' motion for partial summary judgment against Defendant Gregory K. Howell regarding the first, third, and eighth causes of action.   Plaintiffs contend that Mr. Howell violated federal and state securities laws by offering and selling interests in Fruitland Development Group, LLC without the proper registration and licensing.   For the reasons stated herein, Plaintiffs' motion is granted and treble damages awarded.

## FACTUAL BACKGROUND

The pertinent facts for purposes of this motion are few and undisputed.   Mr. Howell was a 50% owner in Fruitland Development Group LLC ("Fruitland"), which invested in various real estate projects.   Mr. Howell and Derrick S. Betts were the sole managers of Fruitland and responsible for the decisions and operations of the organization.   Mr. Howell's specific role as manager was to run the operations of Fruitland, which included selling to the listed Plaintiffs shares of Fruitland in return for a total investment of $650,000.   On November 15, 2006,

1

$200,000 was paid by Daniel and Gladys Matthews by wire transfer in exchange for a 4% share in Fruitland. A similar $300,000 contribution was paid by the Matthews via wire transfer on November 17, 2006 in exchange for a 6% interest in Fruitland. On December 16, 2006, Peter Gibbons and Else Donnell paid by check a combined $150,000 to Fruitland in exchange for a combined 5% interest. Each of these transactions were memorialized in writing and signed by Mr. Howell. At no time was Mr. Howell licensed to sell securities under federal or state law, nor was the interest sold ever registered as a security.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Defendants' motion for summary judgment will be granted, only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Although "[t]he movant has the burden of showing that there is no genuine issue of fact" in moving for summary judgment, the other party "is not thereby relieved of his own burden of producing . . . evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Likewise, the role of the Court is not to weigh the evidence, but to "determine whether there is a genuine issue for trial." *Id*. at 249.

### I. FIRST CAUSE OF ACTION – VIOLATIONS OF §12(a)(1) OF THE SECURITIES ACT.

Plaintiffs allege that their $650,000 investment in Fruitland constitutes the purchase by Plaintiffs, and sale by Mr. Howell, of a security under the Securities Act of 1933, 15 U.S.C. § 77a et seq. (the "Securities Act") (Compl., ¶ 172). Plaintiffs specifically assert a claim under the private right of action provided in Section 12 of the Securities Act (15 U.S.C. § 77l), insofar as Mr. Howell violated Section 5 (15 U.S.C. § 77з). Plaintiffs contend specifically that Mr.

Howell violated Section 5(a) (15 U.S.C. § 77e(a)[1]) by selling or delivering an unregistered security through the use of interstate commerce, and Section 5(c) (15 U.S.C. § 77e(c)[2]) for offering to sell or buy a security by use of interstate commerce for which a registration statement has not been filed.

### A. The Security

In determining whether Mr. Howell violated the Securities Act as alleged, the court must first answer the threshold question of whether or not the sale and purchase of the interest in Fruitland constituted a sale and purchase of a security. The Securities Act defines "security" as "any note, stock, . . . certificate of interest or participation in any profit-sharing agreement, . . . investment contract . . . or, in general, any interest or instrument commonly known as a 'security' . . . ." 15 U.S.C. § 77b(a)(1). Plaintiffs contend that the sale and purchase of the limited liability membership interest in Fruitland qualifies as a security because it is an investment contract. In defining an investment contract, the Tenth Circuit has stated that an "investment contract exists when the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *San Francisco-Okla. Petroleum Exploration Corp. v. Carstan Oil Co., Inc.*, 765 F.2d 962, 966 (10th Cir. 1985) (internal citations omitted). Plaintiffs have provided evidence that Daniel Matthews and Gladys Matthew purchased a 10% interest in Fruitland for $500,000 in or about November 2006, and

---

[1] "(a) Sale or delivery after sale of unregistered securities. Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly--
  (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or
  (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."
[2] "(c) Necessity of filing registration statement. It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 8 [15 USCS § 77h]."

Plaintiffs Peter Gibbons and Else Donnell purchased a 5% interest in Fruitland for $150,000 in or about December 2006. (Compl., ¶ 123.) They further contend that they were to become members in Fruitland as "passive investors relying solely on the experience and skill of Betts and Howell as real estate developers and project managers." (Compl., ¶124.)

Mr. Howell does not dispute Plaintiffs factual contentions, but argues that the sale of interest in Fruitland should be excluded under the definition of a "security" under Utah Code Ann. § 61-1-13. As such, his failure is two-fold. First, Mr. Howell fails to contest any facts previously set forth by Plaintiffs as undisputed that could create a genuine issue of material facts concerning whether the interest was a not a security.[3] Second, based on the facts and evidence before the court, Mr. Howell has failed to offer any tenable argument that the sold interest in Fruitland is exempted under federal law. Indeed, Utah's code is wholly inapposite to the functioning of the federal Securities Act. And in that neither a factual or colorable legal dispute has been presented to the court, the interest sold to Plaintiffs in Fruitland is found to be a security under the Securities Act.

### B. Registration

Plaintiffs contend that the security at issue was not registered as required under the Securities Act. Mr. Howell does not dispute the allegations, nor contend that any registration had been filed. With no evidence to the contrary, the court therefore finds the matter conceded.

---

[3] Mr. Howell contends that insofar as Mr. Gibbons prepared a memorandum to reflect the November 2006 agreement, he not only had input but control. Mr. Howell's argument is unavailing. First, the memorandum was created to memorialize an understanding of the parties. Second, the law is not so rigid to preclude the participation of contracting in the underlying agreement. Indeed, an "investment contract exists when the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *San Francisco-Okla. Petroleum Exploration Corp. v. Carstan Oil Co., Inc.*, 765 F.2d 962, 966 (10th Cir. 1985) (internal citations omitted). Whether or not Mr. Gibbons participated in the contracting has no association with the profits of the enterprise and the efforts from which they were intended or actually realized.

4

### C. The Use of Interstate Commerce

Plaintiffs contend that Mr. Howell offered or sold a security by the use of various means in interstate commerce by soliciting Plaintiffs' investment in Fruitland by telephone, and used email to communicate with Defendants regarding their investment in Fruitland. (Pls.' Mot. Partial Summ. J., 24.) They further contend that Daniel Matthew and Gladys Matthews transferred their capital contributions to Fruitland via bank wire, and that Plaintiffs Peter Gibbons and Else Donnell transferred their capital contributions to Fruitland via Federal Express.[4] (Pls.' Mot. Partial Summ. J., 24.) Indeed, the undisputed facts show that Daniel Matthews and Gladys Matthews transferred their capital contributions to Fruitland via a bank wire transfer. (Pls.' Mot. Partial Summ. J., ¶ 22, 25.) Moreover, Plaintiffs Peter Gibbons and Else Donnell transferred their contributions by means of a check. (Pls.' Mot. Partial Summ. J., ¶ 34.) Particularly in light of Mr. Howell not objecting to the contrary, the court is satisfied that the instruments of interstate commerce were used to offer or sell the securities at issue.

### D. Mr. Howell as a Control Person

The last issue Plaintiffs raise in resolving this cause of action is the extent of Mr. Howell's liability. The Securities Act, 15 U.S.C. § 77o provides:

> Every person who . . . controls any person liable under section 11 or 12, shall also be liable jointly and severally with and to the same extent as such controlled person . . . unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

In order to establish the prima facie case of control person liability, Plaintiffs must establish (1) a primary violation of the securities laws; and (2) control over the primary violator by the alleged controlling person. *See Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305

---

[4] As an initial matter, Plaintiffs have failed to cite materials for this contention under Fed. R. Civ. P. 56(c)(3). The court will exercise its discretion, however, and "consider other materials in the record."

(10th Cir. 1998). Because no decision has yet been made that Fruitland violated the Securities Act, there has not been a primary violation of the securities law for purposes of the control person analysis. Mr. Howell's status as a control person of Fruitland is therefore moot. In any event, Mr. Howell's violation of the Securities Act makes him personally liable, and Plaintiffs' motion for summary judgment on their first cause of action is therefore granted.

## II. THIRD CAUSE OF ACTION – UNREGISTERED BROKER-DEALER UNDER THE UTAH SECURITIES ACT.

Plaintiffs also allege that they have an independent cause of action against Mr. Howell pursuant to Utah Code Ann. § 61-1-22(1)(b). Specifically, they contend that he acted as a broker-dealer as defined in the Utah Uniform Securities Act, Utah Code Ann. § 61-1-13(c), thereby violating Section 61-1-3(1) by transacting business in Utah as a broker-dealer without the proper license. Plaintiffs also contend that Mr. Howell has violated Section 61-1-7, which makes it "unlawful for any person to offer or sell any security in this state unless it is registered under [the Act], the security or transaction is exempted under Section 61-1-14, or the security is a federal covered security for which a notice filing has been made . . . ." Utah Code Ann. § 61-1-7.

First, and as Plaintiffs note, Mr. Howell has never been licensed as a broker-dealer. (Pls.' Mot. Partial Summ. J., Ex. E, 8:4-14.) Second, a "security" under Utah law specifically includes "an interest in a limited liability company," given certain exceptions that do not apply.[5] *See* Utah Code Ann. 61-1-13(ee)(i)(Q), (ee)(ii). Third, no argument or evidence has been presented evidencing that the security was filed or registered, that falls within any other exception. In so far as Mr. Howell's status as an "officer, or director" of Fruitland is moot

---

[5] Mr. Howell argues that Utah Code Ann. § 61-1-13 provides exemptions for ownerships in real property estates. However, the evidence before the court shows that the interest was in Fruitland as a limited liability company, and not in Fruitland's investment properties. Accordingly, the exemption does not apply.

where there is no finding that Fruitland has violated the law, the court will not find him jointly and severally liable for the actions of Fruitland. However, the court finds that Mr. Howell violated the Utah Uniform Securities Act and holds him personally liable for Plaintiffs damages.

Although the court grants damages under Utah Code Ann. § 61-1-22(1)(b), the remaining issue is whether Mr. Howell violated the Utah Uniform Securities Act intentionally or recklessly, and should thus be required to pay an amount in excesses of § 61-1-22(1)(b) as permitted under § 61-1-22(2). The Utah Supreme Court has focused this analysis on whether the underlying violative conduct is intentional and reckless. *See Steenblik v. Lichfield*, 906 F.2d 872, 879 (Utah 1995) (finding that the defendant's signing of the loan disclosure and stock purchase agreements, etc., showed that his conduct was intentional and reckless.). Here, Mr. Howell signed various "Consents of LLC Managers" memorializing the Matthews' purchase of membership interests, as well as the Gibbons memorandum reflecting their agreement. (Pls. Mot. Partial Summ. J., ¶15, 23, 26, 29.) As such, there can be no doubt that Mr. Howell both knew and intentionally sold an interest in Fruitland to Plaintiffs, thereby intentionally violating the Utah Uniform Securities Act. Accordingly, treble damages are awarded under Utah Code. Ann. § 61-1-22(2) and Plaintiffs' motion for summary judgment on the third cause of action is granted.

### III. EIGHTH CAUSE OF ACTION – EXPULSION AS MEMBERS UNDER UTAH CODE § 48-2c-710

Plaintiffs contend that Mr. Howell should be expelled as a member of Fruitland for a variety of reasons. In that Mr. Howell has stated that he has "no argument against being expelled as a member of Fruitland Development Group," the court grants the motion as stipulated by the parties. *See* (Howell's Answer Pls.' Mot. Partial Summ. J., 1) (Dkt. No. 153).

## **CONCLUSION**

For the reasons stated above, Plaintiffs' motion for partial summary judgment is GRANTED. Damages will not be granted until a stipulated agreement is reached between the parties, or until Plaintiffs submit evidence supporting all loses and recoveries to date. Plaintiffs may not double-recover either for amounts already recovered or for separate violations stemming from the $650,000 investment. Plaintiffs have until April 25, 2011 to submit the agreement or affidavit to the court. Mr. Howell will then have until May 4, 2011 to respond or request an evidentiary hearing.

DATED this 23rd day of March, 2011.

BY THE COURT:

_____
Clark Waddoups
United States District Court Judge