IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PETER GIBBONS, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>NATIONAL REAL ESTATE INVESTORS, LC, et al.<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:07-cv-0990-CW<br><br>Judge Clark Waddoups |

## INTRODUCTION

Defendants Hidden Meadow LLC and Warren Brandow (collectively "Hidden Meadow" or "Defendants") move for summary judgment on Plaintiffs' Eighteenth, Nineteenth, Twentieth, and Twenty-First Causes of Action. The court finds that although Plaintiffs have standing to bring their derivative claims under the Eighteenth and Nineteenth causes of action, those claims fail because a contract exists that otherwise defines the rights of the parties. The court also finds that Plaintiffs have failed to present evidence from which a jury could find that there was a meeting of the mind between the alleged conspirators. As such, their Twentieth cause of action for civil conspiracy fails. Lastly, Plaintiffs' Twenty-First cause of action for receipt of stolen property fails where Plaintiffs failed to raise a challenge to Defendants' motion on this claim. Defendants' motion for summary judgment is therefore granted.

1

## FACTUAL BACKGROUND

The relevant facts material to this motion are few and generally undisputed. Although Plaintiffs allege a rather complicated set of facts claiming that they were fraudulently induced to invest in the real estate project that is at issue, those facts relate primarily to their claim against defendants other than the moving parties. Simply stated, the claims at issue on this motion stem from an investment opportunity now gone awry. Plaintiffs were induced to invest in Fruitland Development Group, LLC. In exchange for $150,000, Plaintiffs Gibbons and Donnell were to be given a 5% ownership on November 3, 2006 pursuant to a "Consent of LLC Managers" signed by Derrick Betts and Greg Howell. Similarly, on November 15, 2006, Daniel Matthews paid $200,000 by wire transfer for a 4% membership in Fruitland. And on November 17, 2006, another $300,000 payment was made by wire transfer from Mr. Matthews' IRA for an additional 6% percent ownership. The records at the Utah Department of Commerce, however, did not reflect that the Plaintiffs were recognized as members until February 2, 2010, after the LLC's corporate standing had become delinquent, expired and then was reinstated and Else Donnell, Peter Gibbons and Daniel Matthews were added as new members and managers. Gladys Matthews was apparently not listed as a member.

In January, 2007 Fruitland entered into a Real Estate Purchase Contract ("REPC") with Hidden Meadow for 424 acres of land referred to as the Hidden Property. Taken in the light most favorable to the nonmoving party, Fruitland made a nonrefundable earnest money deposit of $150,000. $100,000 was credited to Hidden Meadow in December, 2006 from a prior would-be purchaser who forfeited its earnest money deposit. The remaining $50,000 was paid by Fruitland in January 2007 at the time the Derrick Betts signed the REPC on behalf of Fruitland and Warren Brandow signed on behalf of Hidden Meadow. Fruitland was unable to close on the

transaction and the $150,000 earnest money was forfeited. It is undisputed that none of the $150,000 came from the Plaintiffs' $650,000 investment. Judgment against Mr. Betts has been entered in favor of Plaintiffs and he has admitted that he had stolen Plaintiffs' money to invest in another opportunity. Plaintiffs allege that Fruitland was unable to obtain financing to close on the Hidden Property purchase because of misrepresentations made about the ability of Fruitland to assume a note for $1.3 million secured by a trust deed against the Hidden Property and to have that trust deed subordinated by Fruitland's own financing. Plaintiffs seek to pursue on Fruitland's behalf the claims arising from these alleged misrepresentations.

## **STANDARD OF REVIEW**

Defendants' motion for summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material fact' is one which could have an impact on the outcome of the lawsuit, while a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented." *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1216 (10th Cir. 2000). Although "[t]he movant has the burden of showing that there is no genuine issue of fact" in moving for summary judgment, "the plaintiff is not thereby relieved of his own burden of producing . . . evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Likewise, the role of the Court is not to weigh the evidence, but to "determine whether there is a genuine issue for trial." *Id.* at 249.

# DISCUSSION

## I. Plaintiffs' Eighteenth Cause of Action – Derivative Action for Unjust Enrichment

### A. Plaintiffs' Status as Members Under Utah Law

Defendants move the court for summary judgment on Plaintiffs' Eighteenth Cause of Action – Derivative Action for Unjust Enrichment. Pursuant to the court's order, both parties have provided supplemental briefing regarding whether Plaintiffs meet the statutory requirements for a derivative action, as outlined in Utah Code Ann. § 48-2c-1701. Specifically, a member bringing a derivative action "must be a member at the time of bringing the action" and "must have been a member at the time of the transaction of which the member complains." Utah Code Ann. § 48-2c-1702.

Plaintiffs Gibbons and Donnell argue that they became members of Fruitland on November 3, 2006 pursuant to a "Consent of LLC Managers" signed by Mr. Betts and Mr. Howell. Indeed, the evidence submitted states that they were given "five (5%) percent ownership." (Pls. Supp. Mem. Opp'n, Ex. E)(Dkt. No. 180-5.) Similarly, on November 15, 2006, Daniel Matthews contributed $200,000 by wire transfer for a "four (4%) percent of [Fruitland Development Group, LLC ("FDG" or "Fruitland")] membership." (Pls. Supp. Mem. Opp'n, Ex. F)(Dkt. No. 180-6, 2, 6.) And on November 17, 2006, another $300,000 contribution was submitted by wire transfer from Mr. Matthews' IRA for a "six (6%) percent ownership of FDG membership interest." *Id.* at 3, 9. This evidence supports a finding that as of the dates of those agreements Peter Gibbons, Else Donnell and Daniel Matthews had invested in and been accepted as members of the Fruitland LLC. The fact, as Hidden Meadows points out, that the filings with the Utah Department of Commerce did not reflect these membership rights is not determinative. Once the Plaintiffs had made the agreed upon payments and had been accepted as

members of the LLC they then had the required interests to have standing and to assert derivative claims under the Utah law. The Defendants have failed to proffer any dispute of this evidence or legal argument as to why these membership interests should be barred for purposes of derivative claims. Nevertheless, no evidence has been presented to the court to show that Gladys Matthews became a member of Fruitland. Indeed, nothing presented supports even a joint contribution because those documents submitted refer only to Daniel Matthews. As such, she is barred from pursuing a derivative claim.

### B. The Derivative Claim

Under the Utah Revised Limited Liability Company Act, a member may bring an action in the right of a company to recover a judgment in its favor, if those "with authority to do so have refused to bring the action and the decision of the managers or members not to sue constitutes an abuse of discretion or involves a conflict of interest that prevents an unbiased exercise of judgment; or . . . if an effort to cause those managers or members to bring the action is not likely to succeed." Utah Code Ann. § 48-2c-1701. In order to bring a derivate claim under Utah law, "the complaint shall set forth with particularity the effort of the plaintiff to secure the initiation of the action by the managers or members or the reasons for not making the effort." Utah Code Ann. § 48-2c-1703.

Plaintiffs contend that emails attached as Exhibits C and D to their Opposition Memorandum evidence that "the Plaintiffs, in fact, requested that Betts and Howell bring action against Schofield, Coldwell Banker and others for the failure to close on the Fruitland REPC, but such action was never taken." (Pls. Mem. Opp'n Mot. Summ. J., 14-15) (Dkt. No. 168.) The cited e-mail is from Peter and Else Gibbons to Derrick Betts. The author wrote, "As members of [Fruitland], I believe that you as managing member have an obligation to bring an action against [Schofield and Coldwell Banker]." (Pls. Mem. Opp'n Mot. Summ. J., Ex. C, 1)(Dkt. No. 168-

5

3.)[1] As Defendants note, the difficulty with this contention is that the Eighteenth and Nineteenth Causes of Action are against Hidden Meadow Defendants. (Second Am. Compl., 45, 47.) Schofield and Coldwell Banker are not listed as Hidden Meadow Defendants in the complaint. (Second Am. Compl., 4.) From the allegations of the complaint, however, the inference must be drawn that the conduct for which Plaintiffs seek to hold Hidden Meadows liable is based, in part at least, upon the actions of Schofield and Coldwell Banker. The language of the statute is not defendant specific. No such case law has been presented to suggest otherwise. Moreover, the purpose of the statute is to assure that the corporate entity was placed on notice of the claims at issue and declined to pursue those claims because of a conflict of interest or abuse of discretion. The record in this case is sufficient to support that conclusion. Indeed, had Fruitland brought the action as requested for recovery of funds, the proper defendant would have been discovered and impleaded. Moreover, the record is sufficient to support an inference that the managers of Fruitland were conflicted in bringing actions for fear of the discovery of their own wrongdoings. Plaintiffs Peter Gibbons and Else Donnell therefore have standing to bring derivative claims. The court further finds that Plaintiff Daniel Matthews also has standing. The fact that Fruitland failed to act upon receipt of the emails from the Gibbons is sufficient to allow a conclusion that any additional demand by Mr. Matthews would have been futile.

### C. Unjust Enrichment

Having found that three of the Plaintiffs have standing to bring derivative claims, the court now analyzes whether the claim of unjust enrichment can withstand a summary judgment challenge. The Utah Court of Appeals has stated that "[a] claim for unjust enrichment is an action brought in restitution, and a prerequisite for recovery on an unjust enrichment theory is the

---

[1] Although the email messages do not have dates on them, the court accepts them as evidence of the alleged demands. Defendants have failed to dispute their authenticity or relevance, but have simply acknowledged them as being "interesting." (Dkt. No. 169, 21.)

6

absence of an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue." *Espinoza v. Gold Cross Services, Inc.*, 2010 UT App 151, ¶ 10, 234 P.3d 156, 158-159 (citing *Ashby v. Ashby*, 2010 UT 7, ¶ 14, 227 P.3d 246). *See also Concrete Prods. Co. v. Salt Lake County*, 734 P.2d 910, 911 (Utah 1987) (stating "Unjust enrichment is a doctrine under which the law will imply a promise to pay for goods or services when there is neither an actual nor an implied contract between the parties. The promise is purely fictitious and is implied in order to fit the actual cause of action to the remedy."). Stated simply, Defendants argue that Plaintiffs' claim for unjust enrichment is barred because any duty owed by Hidden Meadow to Fruitland arises under that REPC and that Plaintiffs allege no facts from which the court could conclude that there was any duty independent of the REPC owed to Fruitland. Because the REPC was an enforceable contract, Utah law precludes any claim for unjust enrichment for duties governed by that contract. (Defs.' Mot. Summ. J., 17)(Dkt. No. 165.) Plaintiffs present no facts to support a claim that Hidden Meadow owed duties independent of the REPC.

Plaintiffs respond that no contract existed because the rights of Somersby, which forfeited the $100,000 credited to Fruitland as earnest money, were passed to Fruitland, and because the Fruitland REPC did not exist at the time of the $100,000 credit. (Pls. Mem. Opp'n Mot. Summ. J., 20)(Dkt. No. 168.) Plaintiffs' arguments fail.

First, if it were true that the "right of Somersby was passed to Fruitland," then those rights would be determined by the contract governing the Somersby funds. (Pls.' Mem. Opp'n Mot. Summ. J., 20.) In such a case, the rights of the parties would still be governed by a contract and the law of unjust enrichment would not come into play. There is, however, no evidence of such an assignment. In any event, Fruitland and Hidden Meadow entered into the Fruitland

REPC on January 19, which also governed the disposition of the full $150,000. (Pls.' Mem. Opp'n Mot. Summ. J., 20); (Dkt. No. 168-5, 1). As such, there can be no doubt that a contract existed. The fact that Fruitland agreed to credit the $100,000 that had been forfeited was simply part of the agreement.

Second, whether the Fruitland REPC existed at the time of the deposit is of no moment. (Pls.' Mem. Opp'n Mot. Summ. J., 20.)[2] It is clear that the money was deposited for the purpose of being an earnest money deposit for the Hidden Property and transferred in anticipation of the formal contract which Plaintiff has stated that "Fruit Group entered into . . . to purchase the Hidden Property from Hidden Meadow." (Second Am. Compl., ¶ 295.) Plaintiffs have neither alleged nor demonstrated that these funds were given for some other purpose, separate and apart from the Fruitland REPC. Furthermore, Plaintiffs have also failed to present an argument that suggests that a transfer of consideration prior to a memorialization of the offer and acceptance somehow voids the existence of the contract.

Lastly, Plaintiffs' attempt to separate the $50,000 from the remaining $100,000 fails. (Pls.' Mem. Opp'n Mot. Summ. J., 20.) Regardless of who actually gave the money and on whose behalf it was given, the earnest money deposit requirement under the REPC was $150,000. (Dkt. No. 168-5.) Put simply, the monies were governed by a contract. And because a contract does exist, Plaintiffs' claim is barred.

---

[2] The court makes a number of notes regarding Plaintiffs' argument that "at the time such money was transferred to Meridian on December 22, 2009, the Fruitland REPC did not exist. Ex. A, Disbursement to Hidden Meadow. The Fruitland REPC was entered into on January 19, 2007, well after Hidden Meadow received the wire transfer from Meridian on December 22, 2009." (Pls.' Mem. Opp'n Mot. Summ. J., 20.) First, there has been at least one, and probably multiple typos regarding the years involved. Second, with the dates incorrect it is difficult for the court to determine whether Fruitland REPC actually did not exist at the time of the transfer. Third, (Dkt. No. 168-1, 1) – which document the court presumes to be the $100,000 disbursement to Hidden Meadow on December 31, 2007 – is illegible. Fourth, the date on this document conflicts with Plaintiffs' proffer that the money was received by Hidden Meadow on "December 22, 2009." In the end, Plaintiffs have made it extremely difficult for the court to construe the evidence in favor of the Plaintiffs for purposes of Defendants' motion, when the evidence before the court as presented by Plaintiffs is at best, unclear.

## II.        Plaintiffs' Nineteenth Cause of Action – Derivative Action for Negligent Misrepresentation

Having found that three of the Plaintiffs have standing to bring a derivative action on behalf of Fruitland, the court now considers the motion for summary judgment on Plaintiffs claim of negligent misrepresentation against the Hidden Meadow Defendants. As a threshold matter, the court analyzes this claim in view of the economic loss rule. The Utah Supreme Court has explained:

> The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care . . . . The proper focus in an analysis under the economic loss rule is on the source of the duties alleged to have been breached. Thus, our formulation of the economic loss rule is that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law . . . . The initial inquiry in cases where the line between contract and tort blurs is whether a duty exists independent of any contractual obligations between the parties. When an independent duty exists, the economic loss rule does not bar a tort claim because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule.

*Hermansen v. Tasulis*, 2002 UT 52, ¶¶ 13, 16-17(internal citations omitted).

*Hermansen* involved a real estate broker who was alleged to have a duty to disclose known material defects in the soil condition of a subdivision. *Id.* at ¶19. The court reasoned that because a real estate broker is "a licensed person or entity who holds himself out to the public as having particular skills and knowledge in the real estate field [he] is under a duty to disclose facts materially affecting the value or desirability of the property that are known to him." *Id.* at 20. In contrast to *Hermansen*, however, Plaintiffs fail to claim that the loss at hand is anything but economic. Secondly, Plaintiffs also fail to articulate Defendants' duties that arise exclusive of the REPC. As such, Defendants motion for summary judgment on this claim is granted.

### III. Plaintiffs' Twentieth Cause of Action – Civil Conspiracy

Defendants also move for summary judgment on Plaintiffs' Twentieth Cause of Action – Civil Conspiracy. Under Utah law, civil conspiracy requires proof of five elements: "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, ¶ 29. Defendants argue that there is no dispute of material facts regarding this claim, and that Plaintiffs fail to provide evidence sufficient to support their claim. Specifically, Defendants argue that Plaintiffs offer no evidence from which a jury could find that Defendants had ever had conversations, let alone conspired, with the Fruitland Defendants to steal or fraudulently obtain the Plaintiffs' investment money. (Defs.' Reply)(Dkt. No. 169, 17). Defendants further argue that Plaintiffs have failed to provide evidence from which a jury could find that there was any meeting of the minds to engage in such conduct. *Id.*

Plaintiffs attempt to rebut Defendants' motion with various arguments. Those arguments fail. Plaintiffs argue that they have "set forth genuine issues of fact concerning Betts relationship with Schofield and Brandow," and that "Schofield was a partner in attempting to acquire the Fruitland Property, and Schofield and Betts were partners in a company called Springwater Partners, LLC." (Pls.' Mem. Opp'n Mot. Summ. J., 21.) These assertions, even if evidence could be offered to support them, substantiate nothing more than that the Defendants were in a position where they could have conspired. The assertions, even if accepted as true, fail to support a jury finding that there was "a meeting of the minds on the object or course of action." Indeed, Plaintiffs have failed to present any such evidence in opposition to this motion. The failure to provide such supporting evidence by itself is sufficient grounds for the court to grant Defendants' motion.

Plaintiffs also argue that Mr. Brandow denied that he was aware that Mr. Betts and Mr. Schofield were partners, but that he allowed the Somersby REPC earnest money to be credited toward the Fruitland REPC earnest money when no Fruitland REPC existed. (Pls.' Mem. Opp'n Mot. Summ. J., 21). While it appears that Plaintiffs are arguing nefarious activity, the evidence cited fails to support this contention.[3]

Similarly, Plaintiffs fail to explain how Mr. Brandow's supposedly inconsistent testimony would be sufficient for a jury to find that he had engaged in a conspiracy to steal of defraud Plaintiffs of their investment in Fruitland. (Pls.' Mem. Opp'n Mot. Summ. J., 21-22.) Plaintiffs argue that the foregoing "when combined, create a genuine issue as to whether the Defendants conspired with Betts and Howell to defraud Plaintiffs of their money, whether Schofield had apparent or real authority to act on behalf of Hidden Meadow and Brandow, whether in fact he was acting on their behalf, and the relationship between Schofield, Betts, Howell and Brandow." (Dkt. No. 168, 22). Accepting Plaintiffs' summary of the factual evidence, Mr. Schofield's authority, his actions on behalf of Defendants, and his relationship with Defendants, are not elements of the civil conspiracy claim. Plaintiffs have constructed a narrative that side-steps the civil conspiracy analysis and fails to provide evidence that there was any sort of meeting of the minds between the parties. Indeed, no such evidence has been presented. As such, Plaintiffs' Twentieth Cause of Action – Civil Conspiracy fails. Summary judgment is granted in favor of Defendants Hidden Meadow, LLC and Warren Brandow.

---

[3] Plaintiffs' citation "Ex. B, Brandow Dep. T. 30:17-31:18.; Ex. J," appears to refer to Exhibit 5, (Dkt. No. 168-10, 1-2.). If indeed this document stands to suggest that Brandow and Betts were in breach of the Somersby REPC, as Plaintiffs suggest in their brief (Pls.' Mem. Opp'n Mot. Summ. J., 21), Plaintiffs' have still failed to explain how this damaged Plaintiffs. In any event, the court is not going to simply accept Mr. Schofield's legal conclusion of collusion.

### IV. Plaintiffs' Twenty-First Cause of Action – Receipt of Stolen Property

Defendants also move the court for summary judgment on Plaintiffs' Twenty First Cause of Action – Receipt of Stolen Property. Plaintiffs, however, fail to offer any challenge. Not a single heading in their opposition refers to this cause of action. In fact, the word "receipt" is nowhere to be found. Therefore, because Plaintiffs do not dispute Defendants' motion on this cause of action, the motion is granted.

## CONCLUSION

For the reasons stated herein, Defendants Motion for Summary Judgment against Plaintiffs' Eighteenth, Nineteenth, Twentieth, and Twenty-First causes of action is GRANTED.

DATED this 6th day of December, 2011.

BY THE COURT:

_____

Clark Waddoups

United States District Judge